Mr. T. Justice, and may it please the Court, a defendant cannot lose his right under the Confrontation Clause to exclude testimonial hearsay simply by making a legitimate defense based on admissible evidence. And that is true even if the hearsay the prosecution would like to introduce would supposedly contradict that defense. To the contrary, history and experience tell us that is when the clause's guarantee of cross-examination is at its most urgent. The State never directly disputes the legal propositions I just advanced. Instead, in the State's red brief, it advances for the first time a new argument never before made in this case. According to the State's new theory, Mr. Hemphill forfeited his confrontation rights because he made supposedly improper arguments at trial. And apart from this new theory's 11th hour appearance, there are two major problems. First, it finds no support in the record. The Joint Appendix is crystal clear that the reason why the trial court admitted Morris's allocution was because Mr. Hemphill claimed Mr. Morris was the shooter. He advanced a third-party defense. And the State again and again asked to introduce Mr. Morris's allocution to refute that defense. And I will turn the Court to Joint Appendix page 185, which is where at the top of that page the trial court summarizes its ruling. It says the defense's argument is, quote, in all respects is appropriate and under the circumstances of this case probably a necessary argument to make. But then the trial court says, nonetheless, that argument opens the door to evidence offered by the State refuting the claim that Morris was, in fact, the shooter. The second problem with the State's new theory is that it finds no support in New York law either. New York's opening-the-door theory has no impropriety requirement. Instead, all it requires is the evidence the prosecution seeks to introduce to be in conflict  with the defense. And that's why the State itself admitted at page 4 and 5 of its brief in opposition in this Court, just like throughout the State courts, that the reason why Morris's allocution was admitted was because it contradicted the defense, not because of any supposed impropriety. So at bottom what you have in front of you today is a State law rule in a holding under Reed, the New York Court of Appeals decision, that says that a legitimate defense based on admissible evidence can forfeit the Confrontation Clause. That rule flouts the history, purpose, and experience of the Confrontation Clause. I'm happy to entertain the Court's questions, but I will-otherwise, I turn first to history. A couple of quick questions, Mr. Fisher. The-I mean, you point to the State's eleventh-hour change in arguments, but I think we-you have some eleventh-hour changes, too, it appears. Did you focus on the constitutionality of Reed? Below it seemed as though you were challenging the application of Reed and did not assume that even if Reed were properly applied, that you would have a Confrontation Clause problem. Justice Thomas, we made-we made a Sixth Amendment argument all the way through the case, including challenging the State's argument that Reed dictated a forfeiture of the right here. And the place that it's most directly made is in pages 386 and 388 of the Joint Appendix. That's our brief to the New York Court of Appeals. And there we said-this is on page 388-we said that if Reed is construed to mean that simply rendering testimonial evidence relevant because it would dispute the defense case, then Reed cannot be squared with the Sixth Amendment and it has to be wrong. And so we said quite directly to the New York Court of Appeals exactly what we're saying here, is that a rule of opening the door that depends on expanded relevance cannot be squared with a Confrontation Clause. That's the core of the argument we're making with-in front of you here today. I think- Mr. Fisher, under what theory would Reed be constitutional? I thought Reed basically said you can open the door to testimonial hearsay. So isn't your-why was your argument as applied? When would it ever work? Well, I- Under your theory. I don't think it would ever work, Justice Sotomayor, and we've made that clear in everything too, but- So answer Thomas's question. Why didn't you just say Reed is unconstitutional? Well, because-remember, we were in the New York Court of Appeals facing Reed, and I think what we said to the New York Court of Appeals was if there's any chance that Reed has any legitimacy to it, it would have to be limited to something like the rule of completeness. There's a New York Appellate Division case called Coe, and that's what the New York Court of Appeals had relied on in Reed. And we said at the very least, you have to limit Reed to the situation of a rule of completeness scenario. And I think that would be the only arguable situation. Now, as we explain in our briefs, we think even in a rule of completeness situation, there would be no legitimate open-the-door theory that would forfeit constitutional rights. But we also admit, Justice Sotomayor, that's not a question this Court would have to decide in this case. We wouldn't, but I'm curious in your view. The defendant's argument is that he had on such-and-such a day a fever of 103 in the morning. And the Petitioner says, I would like to introduce the records that are kept, the medical records, which are of course here set, that shows he had a temperature of 101. So he can't do that? I mean, he can't. It doesn't cross-examine the people who kept the medical records or like, you know, a lot of them in Austin. Well, Justice Breyer, we have no problem with the opening-the-door theory as a matter of ordinary evidence law. No, it's not ordinary evidence law, as you know perfectly well that the problem with Crawford is that there are all kinds of hearsay exceptions, which do involve a failure to cross-examine. You don't cross-examine a hearsay exception, the person isn't there. And which ones does Crawford keep out and which ones doesn't, and is it just historical or not? Now, I don't want to lead you down that path where you need not go, but just in case you have something that will be enlightening, I wanted to give you a chance. Well, I think I understand your question. You're right that our theory is limited to testimonial statements and that the court has had a series of cases where it's delineated that line. As this case comes to this court right now, Morris' allocution is unquestionably testimonial because it was made in formal ex parte proceedings in front of a judge in the state I don't think disputes that proposition. So what you have with you in front of you is a classic case under Crawford where in Part 3B of the opinion, the court painstakingly went through the historical evidence and other sources of constitutional law and held that if the witness is unavailable through no fault of the defense or the prosecution, but the statement is testimonial, it has to be kept out. And the weird thing about Reed is that would, in effect, create an exception to that rule in the most damaging of all circumstances, when the testimonial evidence is directly contrary to the defense. Well, let me give you another example that's along the same lines as Justice Breyer's. Let's say that Morris gave a videotaped statement to the police and at the beginning of the statement, he said, your client, Mr. Hempel, had nothing whatsoever to do with this shooting. But then later, after being confronted with evidence that undermined some of the things he said, he said, okay, fine, I wasn't telling the truth before, he actually was involved in this. And then your client introduces the first part of the statement, which is exculpatory, somehow gets that in under state hearsay law. Would you say that the Confrontation Clause would bar the prosecution from introducing the rest of the statement where Morris contradicted what he said earlier? Well, Justice Alito, you're obviously asking about the rule of completeness scenario that's not present in this case. So our first answer would be, yes, we think the Confrontation Clause would prohibit the prosecution even then. But I would hasten to add, Justice Alito, I don't think Mr. Hempel in your hypothetical would be allowed to introduce that first part of the statement. No, I don't know how he could, but I'm not sure how some of the evidence that was, some of what was introduced here by the prosecution was admissible. But that's a matter of state hearsay law. But seriously, you think that a trial could entertain that travesty where the exculpatory part of the statement is introduced, that's permitted, but the inculpatory part is not introduced? Again, I think you wouldn't ever have that scenario because it would be inadmissible in the first instance under Rule 403, which under Crane and Holmes, the court has said can be enforced. So if the state were to object, Justice Alito, that objection should be sustained. But I don't want to be fighting your hypothetical too hard. I do understand you're asking me a question about the rule of completeness. And I think what the court said in Crawford and Giles is that only historically grounded exceptions to the Confrontation Clause are permitted. And we don't see any evidence. But that goes beyond this case, doesn't it, Mr. Fisher? It goes well far beyond this case. I mean, we don't have to touch that, do we? Why should we touch it, I suppose? Why are you even arguing it? I'm just answering Justice Alito's question. I don't think you do have to go anywhere near that in this case, Justice Kagan. And I think I would readily admit that's a much harder question. We take cases for the most part, excuse me. We take cases for the most part to decide important legal questions and not just to determine whether there was an error in a particular criminal trial in the Supreme Court of New York for the county of the Bronx, right? So the important legal question here is whether there can be a waiver of the Confrontation Clause, right, either expressly or implicitly. That's the underlying, that's what's important about this case. And it may well be that the New York open the door rule goes too far. And you just want a ruling on this particular case. But isn't that the underlying question that is important here? I think that is a broader framing of the question and the court needs to resolve in this case. There is a very important legal question that arises into the New York Court of Appeals decision in Reed. And which also has been adopted, as we noted in our cert petition, by a Fifth Circuit decision and a New Hampshire Supreme Court decision. And that position is, leaving entirely aside the rule of completeness, you have two state courts of last resort and one federal court of appeals that have said that merely introducing a defense or evidence that can be contradicted by an out of court testimonial statement is enough to forfeit the Confrontation Clause right. And that is a very important rule that if it were adopted, as we said in our cert petition and again in our merits brief, would effectively wipe out the Confrontation Clause or at least render it toothless in all the situations where it matters the very most. You can go all the way. Is there a difference in, maybe it's a variation on Justice Alito's question, but it may be an important one. It's one thing to say if the import of the testimony that's introduced is, you know, I wasn't there, and the testimony that cannot be confronted is, he was there. But it's another thing if what's being admitted is, nobody has said that I was there. And in fact, the witness who can't be confronted said he was there. It's sort of not for the truth of the matter asserted whether he was there or not, but a very specific incontrovertible statement. The person said he was there, and he says nobody said I was there. Is that a violation of the Confrontation Clause? So Mr. Chief Justice, I'm going to answer your question, but I first want to say I agree that's also a hard hypothetical. I've not found a single case in over 400 years of common law jurisprudence with the rule we pronounce where that has ever come up. And I think the reason why it never comes up, just to finish my preface if you'll forgive me, is because that statement that you're imagining would be barred itself by the hearsay rule. He couldn't comment as to what somebody else out of court said or didn't say. But if you had a hypothetical like that, notwithstanding the rules of evidence, and over 400 years since King v. Payne for the rule that we've been propounding here, I think then I would still say that the Confrontation Clause would bar that remedy. I think there'd be other remedies the trial court could resort to, starting with striking the defendant's testimony, instructing the jury to disregard it, maybe even informing the jury of some other background fact, not for the truth of the matter asserted, to solve the problem. And I think, Mr. Chief Justice, you've given a much more extreme version of- But what if the witness is not there because the defendant murdered him? Well, that would raise a Giles question. And if the reason for murdering the witness was to keep the witness from testifying, the court's holding in Giles would have a forfeiture there. I mean, if he murdered him for some other reason, it doesn't make a difference? That's the holding of Giles, Mr. Chief Justice. And I think what Giles said is that it has to be an intentional act on the defendant's part to keep the witness from testifying. And I think that just highlights, even if you think Giles is a harsh rule, it highlights how strict forfeiture is in the Confrontation Clause context and, indeed, across all constitutional doctrine. The defendant has to do something inconsistent with asserting the right. I think that's the easiest way to put it, at the very least. And Mr. Hemphill has done nothing inconsistent with asserting his right to cross-examine Morris. He didn't introduce any statements Morris made out of court, nor did he comment at all on anything Morris said or didn't say. He's just simply said, I have a right to cross-examine the person whose testimony is being used against me, which is the most fundamental of all objections. Mr. Fisher, let me put it to you this way. Let's say that we disagree with you that the rule of completeness violates the Confrontation Clause, but we're inclined to agree with you that the door-opening rule does. How do we describe the rule? Because, I mean, I think kind of what all these questions are getting at is that the rule of completeness seems like the same thing, but at a more precise level of generality. There's a door-opening rule. So, I mean, Justice Alito is right. We don't want to write an opinion just to address the facts of this case, but we would have to be careful, right, if we agreed with you, to write the opinion in a way that didn't close the door, so to speak, on the rule of completeness problem. Right. So there'd be two ways that the court could, in a future case, distinguish the rule of completeness, neither of which would undercut a ruling in my favor here. One is the court could say what the court said in Beach Aircraft, which is when the rule of completeness is invoked, the statement is invoked for — the statement is later introduced for a non-hearsay purpose, to give a broader context for the original statement. Here, by contrast, there's no doubt, and the State openly admits, that Morris' allocution was introduced for the truth of the matter asserted, to prove what gun he had at the scene of the crime, supposedly. The second way you could distinguish rule of completeness would be that under a theory where if the defendant put in part of an out-of-court statement, for example here, if Mr. Hemphill had put in part of Matt Morris' allocution, you could think in that context that the defendant has made Mr. Morris, in effect, his witness. He is the one who has invoked his testimony, and so it's not a witness against him, because the prosecution is now simply, in effect, filling out the testimony of the defense witness. Again, neither of those theories would get you in any trouble to write an opinion that we're asking you to write today, and with a footnote that reserves rule of completeness. Simply saying that if the prosecution comes to court, and all they say is this testimonial statement contradicts what the defense theory is, that that cannot be enough to forfeit competition. Mr. Fisher? Yes. Mr. Fisher, isn't there another way to write it? I'm not saying that we should do this, but another way, picking up from Professor Friedman's amicus brief, would be that the rule of completeness is a rule that has existed for centuries, but what happened here goes beyond the rule of completeness for reasons that Justice Barrett identified, the level of generality. Well, I think you're certainly correct, Justice Kavanaugh, that the rule of completeness does have historical roots that are completely absent from the broader open-the-door theory that's in front of you today. I'm not so sure that those common law roots, and the state hasn't pointed to any evidence to the contrary, that those common law roots included using that rule against defendants in criminal cases, and that will be the case under Crawford. Sorry to interrupt. Professor Friedman acknowledges that, but says there's no indication that would be applied only in favor of and not against a criminal defendant as well. But I take your point on that, and he responds to that as well. I think, Justice Kavanaugh, maybe the short answer is I think you're right. That would be at least another ground the court would want to look at carefully, and if the court wanted to reserve that piece of it as well, you know, sketching out different theories with a rule of completeness may be different. There would be no problem with that here, and you could look at it more closely if that case ever arose. It would certainly, again, not get in the way of this case, and my critical submission to the court right now would be that this so-called opening-the-door theory based on mere contradiction of the defendant's case is wholly without common law foundation. And that's particularly striking for two reasons. One is, even though the court in Crawford and Giles and other cases has said that the Confrontation Clause codifies the common law rights, the State has openly admitted in its brief that it has no historical support for the rule that it's arguing for today. And that's a big concession, given that for hundreds of years, defendants have gone into court and said somebody else did it, or I wasn't there, or I acted in self-defense, as Mr. Crawford himself said, or as Mr. Raleigh said. I didn't participate in this plot. And then the out-of-court statement said, yes, you did. Since the beginning of the criminal law, defendants have defended themselves in ways that out-of-court statements could be introduced to directly contradict their own defense. And the common law, up to the founding and 200-plus years since the founding has always kept those statements out, absent an opportunity for cross-examination. Can I take you back to Justice Thomas's first question about what you did and did not raise in the Court of Appeals? You pointed to page 388. Maybe I'm missing the most important language on 388. But in the final, the second full paragraph on 388, your brief began, the appellate division's analysis equates presenting a valid, evidence-based third-party defense with misleading the jury. And then the final sentence, I gather this is what you're referring to. It's the only one that refers to the Confrontation Clause. Such an approach is absurd in the context of the Confrontation Clause, the purpose of which is to afford the accused the right to meaningfully test the prosecution's proof. And this is under the section of the brief that is labeled, the defense did not open the door. I mean, if I were on the New York Court of Appeals, I would interpret that argument to mean that there was a misapplication of the opening the door test. And it was this misapplication that violated the Confrontation Clause. I'd be pretty sore, I'll tell you. If I were a judge on the New York Court of Appeals and I got back from this court a decision that said you erred in your understanding of the Confrontation Clause when the only thing I had before me was this sentence. Justice Alito, you're asking an important question and I want to give you three answers. So first, it's not just in that last sentence there, it's also earlier in the paragraph that the Confrontation Clause is mentioned. The Confrontation Clause is also mentioned on page 386 where what Mr. Hemphill argued was that if relevance is enough to overcome a Confrontation Clause objection, that would violate the Sixth Amendment. So that's the first thing is that the Confrontation Clause was threaded through this argument. The second thing is, it's important to remember the context in which this arose. Mr. Hemphill raised the argument under the Sixth Amendment from the first moment of trial that introducing Morris' allocution would violate Crawford and the Confrontation Clause. That's his federal claim, that introducing Mr. Morris' allocution would violate the Confrontation Clause. Opening the door is the state's answer to that claim. And so the state is coming to now saying, even though we persuaded the New York courts to adopt our response to his Sixth Amendment argument, the defendant doesn't have the right to keep making his Sixth Amendment argument. And the last thing I would say, Justice Alito, is even if the way you read the arguments we made to the New York courts to say, look, we understand that Reed holds as a matter of Sixth Amendment law that a defendant can waive or forfeit his confrontation right simply by presenting evidence that could be contradicted by testimonial hearsay. And we pushed back against Reed in the New York Court of Appeals without directly and explicitly saying we think Reed is entirely wrong anyways. That would just make this case exactly like two of the court's recent cases where it found no preservation problem. One is Holmes, where the court wrote the unanimous opinion. I believe you authored it. And the state made exactly the same argument that the state is making here. It were the first six pages of South Carolina's brief in that case that what the defendant had done there is simply argue for the misapplication of a prior decision of the South Carolina Supreme Court. And this court didn't even deem that argument in the opinion worthy of comment. In Riley v. California, you had the same scenario. Now, I don't think we're even as far out on the edge as either of those two cases. But what you have is a common theme where defendants go to the state court of appeals or the state high court, whatever it may be called, and say our constitutional rights were violated. And if that prior opinion is applied in this case against me, that would itself violate the Constitution. And I think the court has always found that that's enough to preserve a federal constitutional argument for this court. And that's what we would rest on if we needed to. The last thing I'd like to say before turning to any of the court's one-by-one questions or reserving the remainder of my time, Justice Breyer, you asked me a question earlier about the testimonial theory of Crawford. And obviously, my first answer is that's not in front of you here today. But going back to the New York Court of Appeals' opinion in Reed, it cited this court's decision in Harris, which involved the Miranda rule and the forfeiture exception to the Miranda rule. And I want to draw out one important difference there. Even if you didn't want to get wrapped up in the testimonial versus non-testimonial line under Crawford, it's important to note that this case is miles away even from Harris. First of all, Harris involves a prophylactic rule, and this involves a rule of exclusion in the Constitution itself. And the other thing in Harris is what the court said is the truth-seeking process of the courts should not be perverted by allowing the defendant to manipulate evidence and keep out trustworthy evidence. Well, what you have here, even if you leave Crawford entirely aside, is the classic form of presumptively unreliable evidence the Confrontation Clause has always been concerned with. You have a statement of a third party spreading blame, denying guilt, at least as to the type of gun involved in the homicide, and giving a self-exonerating statement in coordination with the state with contemplation of further prosecution. And so whatever theory of the Confrontation Clause you may have, this is the classic kind of statement that needs to be kept out. And in Kirby in 1899, the court said that guilty pleas of accomplices are not admissible against criminal defendants. So again, what you have here just dressed up in different garb is a classic Confrontation Clause violation under any theory of the clause. I'm happy to take one-by-one questions if the court has any. Don't you think it's a bit odd that the Court of Appeals disposed of this on an abuse of discretion standard, that if it had been, that if it thought it had a constitutional issue before it, it would not have disposed of it on that standard? I agree, Justice Thomas, it is odd that it's framed in terms of abuse of discretion. I will tell you from reading a lot of lower court Crawford cases that this happens quite regularly as the courts get, they sort of mix up evidence and confrontation law. But Justice Thomas, if you look at the briefs in the New York Court of Appeals, the only thing we were arguing about was whether or not the Sixth Amendment was violated. The only argument we were making was that the Constitution had been violated. And even when we argue, this is back to Justice Alito's question, even when we argued that the door was not open, what we were arguing was under Reed's constitutional holding about opening the door, we didn't satisfy that rule. And a much different question and probably not nearly, not that important, but I'm a bit confused as to what amounts to a Constitution, a confrontation clause violation. For example, if I say you were, Hemphill was there and he was a shooter and that, of course, that if Morris had done that, I think we'd both agree that's a problem. But in Morris' allocution, he said, I had a .357 Magnum. How is that? I know its use could be, that it could be used to confront or to disagree with or contradict Hemphill, but I don't see Morris' statement by itself about himself being a confrontation clause problem. Well, my answer, Justice Thomas, starts with the text of the Sixth Amendment, which remember gives the defendant the right to be confronted with the witnesses against him. So how is that against him? That's, Morris didn't say anything about Hemphill. Right. So he's, so certainly Morris is acting as a witness when he gives that statement. But against. And against is answered by the court's decision in Melendez-Diaz. In Melendez-Diaz, the court said that if the prosecution enters testimonial statements from a witness, that itself is what renders it against the defendant. It doesn't have to be directly accusatory. If the rule were otherwise, in every case where the prosecution had a circumstantial case without a direct accusation, it could prove in its entire case with affidavits, otherwise under the confrontation clause. It's never been limited to. I understand if you say it advances one of the elements of the crime. I get, I understand that. But if someone admits something that has nothing to do with the defendant, but it's inconvenient for the defendant or contradicts the defendant, yeah, you say, well, the use of this statement harms the defendant. You could say that about the weather. You could say it about, you know, geography. You could say it about lots of things. Someone could say, oh, North Carolina is south of Georgia. And you could introduce someone saying, you know, evidence that it's not. I mean, well, that's evidence against them. I don't see how you do that. I don't see how you could take something that's neutral and just because it's used to contradict the defendant, that is now witness against the defendant. So two answers, Justice Thomas. The first is this is answered by Melendez-Diaz where the court said if the statement is testimonial and the prosecution then introduces it, that's what makes it against the defendant. But Justice Thomas, even if you had some problem with the Melendez-Diaz holding on that score, I would urge you to focus back on this particular case. Remember that Morris' defense was that Hemphill did it. And the prosecution itself at the time of this plea and allocution told the court, we're getting this allocution with an eye toward future prosecution of somebody else. So in context, him saying I had a .357 and not a 9 millimeter is in effect pointing the finger at Mr. Hemphill, which was in his entire defense all along. Justice Breyer? Now, you thought of this, I bet, but you didn't say it because this is not, I can think of 15 ways of getting your case out of this question, all right? But there is a general question. Here say is statements made out of court for their truth. And we have, I looked up here, 24 exceptions including, for example, baptismal certificates. So if you were to take Crawford literally and keep out every statement on the constitutional ground made for its truth, well, that's the end of the hearsay exceptions. So that can't be right. Then this court has said it isn't right. And they said let's look to see if the hearsay exceptions are, and now they've said, justified by history, justified by maybe trying to kill a witness who was going to testify against you, and not gone much further. Okay. I've said, look at the purposes, look at the consequences, look at how it fits in. Not everybody agrees with that. What do you think? So I think, what I think is what the court held in Crawford, which is you don't go straight from is it hearsay to is that hearsay exception firmly grounded. That's more like what the Roberts theory was. What you do under Crawford is you ask an intermediate question in between those two, which is, is the statement testimonial? Yes, it's testimonial. For the vast majority of hearsay exceptions, the answer is unequivocally no. Really? A baptismal certificate is a person who at one point in time signed a piece of paper which said Joe Jones was baptized on such and such a date. But not with an eye towards future criminal proceedings. Ah, there has to be an eye towards future criminal proceedings. Otherwise, Crawford doesn't apply. I think that's the holding in Crawford. Okay, okay, okay. Eye towards future criminal proceedings. Yes. So therefore, crime labs are in, the hospitals are out. For the most part, hospitals are out. I don't, I wouldn't venture every possible. No, no, no, criminal hospitals are in. I think there can be, you know, forensic examinations of hospitals that are a borderline case, and you know, you may see that in the future. Justice Alito? Mr. Fisher, the New York argues that the Reed rule ought to be viewed as essentially a procedural device along the lines of other procedural devices, which we've said fall outside the ambit of the Confrontation Clause. I believe it references Illinois v. Allen. It references Melendez-Diaz. Why is that wrong? So for two reasons. One is the New York Guide to Evidence itself calls the rule of completeness and the more broader Opening the Door Theory rules of evidence. So just as a matter of nomenclature and characterization under New York law, the state is wrong. But just leaving labels aside, the reason why the state is wrong is because the admissibility of a statement under the Opening the Door Theory turns on the content of the statement. And that's to be contrasted with situations like notice and demand under Melendez-Diaz or Illinois v. Allen or things that depend on things having to do not with the content of the defendant's case, but rather about his timeliness of an injection or his other, you know, other procedural actions he might take. So we distinguish substance of the statement rules, which are evidence rules and which run into the Confrontation Clause from just procedural devices to manage the trial with defendants have to meet under the Confrontation Clause and any other constitutional. Mrs. Gorsuch? Good morning, Mr. Fisher. So I suppose the state may try and come back and suggest that its rule is actually pretty close to and not much of an outgrowth of the rule of completeness. What are the distinguishing features in your mind that make this radically different? The core distinguishing feature is that in a rule of completeness situation, the defendant has put in part of the absent witness's statement into play. Whereas here, Mr. Pemphill did not put Mr. Morris' testimony or anything else he said into play. Why not? With the statement about the 9-millimeter casing found, where else would it have come from? Well, that's just a true fact about evidence found in Mr. Morris' apartment. And that's far different than what he said. And again, Justice Gorsuch, I just returned to the text and purpose of the Confrontation Clause, which doesn't have to do with the substance of defenses. It has to do with witness testimony. And so... I understand that. But just in terms of drawing a line between this and a rule of completeness argument, if we were concerned with not doing that, how would you go about writing that? I would write it to say that we leave for another day any question about forfeiture where the defendant himself introduces part of the absent witness's statement or any statement by that absent witness. That would present a different question from one where the defendant simply presents a substantive defense through evidence and argumentation that can be contradicted by the statement. A fact in the world. Yes. Okay. Thank you. Justice Kavanaugh, anything further? No further questions. Justice Barrett? Thank you, Counsel. Ms. Mignola? Mr. Chief Justice, and may it please the Court. Now, you have recognized, I think, that the petitioner is asking for a broad and sweeping rule. He's essentially claiming that a defendant can never open the door to the admission of evidence that would otherwise be barred by the Confrontation Clause. It doesn't matter if a defendant has misled the jury, and really, if his approach is taken to its extreme, even the traditional rule of completeness would fall. He surely is wrong about that, but I want to call your attention to the fact that New York State's highest court, he did not present that broad claim, that New York's opening the door rule was unconstitutional on its face. He presented only an unconstitutional, as applied to him, challenge. New York's court had no occasion to consider whether the rule is unconstitutional on its face. Because he bypassed New York's high court, review of this claim should be outside of this court's jurisdiction. Even if this court could review the claim, it should certainly reject it. New York's rule, the trial court may provide a limited but necessary remedy when the defendant creates a misleading impression. The rule is constitutional. As this court has recognized, like any other constitutional right, the right to be confronted with witnesses is not absolute. There are limitations, and limitations are appropriate if they have a legitimate purpose, and New York's rule does. It allows the state court to protect the vital interest that it has in the integrity and truth-seeking function of the trial process. This is not about being fair to the prosecution. It's about the jurors and the court's duty to make sure that jurors are not unfairly misled. Moreover, a state may impose rules that govern the manner in which a defendant may assert or forfeit, even by his silence, his right of confrontation. New York's rule is an appropriate limitation in this regard. It's not an exception to the confrontation clause, because it is not a substitute means for the prosecution to establish the reliability of evidence. It's a remedy, a remedy that is triggered when the defendant or his lawyer's intentional trial conduct violates the state's prohibition against misleading the jury. I do welcome the court's questions. Mr. Fisher gave some examples in the record as to why he raised, petitioner raised the confrontation clause issue below. Would you address those specifics that he raised? Well, Your Honor, I think if you look at the joint appendix starting at page 385, this is what he told the New York Court of Appeals. The only issue before this court is whether the defense opened the door to Morris' testimonial hearsay, end quote. Now, that is simply not a challenge to the constitutionality of New York's rule on its face. He did raise a Sixth Amendment challenge. He did invoke the confrontation clause, but that is not the same thing as saying the rule on its face is unconstitutional. I believe that's the question that this court has been asked to review, and it simply was not presented to New York's highest court. You should not be allowed to bypass the state court in that way. And that's particularly true in this case where the state's high court had an adequate and independent basis to reject the claim. Petitioner failed to preserve the broad constitutional claim, and therefore by state statute, the New York Court of Appeals lacked the jurisdiction to review it by bypassing the state high court. He's avoided, he avoided an explicit ruling. Yes, Your Honor. Complete your sentence. I'm sorry. He avoided an explicit ruling from that court denying the claim on adequate and independent state law grounds. So to review that claim now will encourage litigants in the future to withhold from the state court a claim challenging the constitutionality of a state rule so that the state cannot have the opportunity to reject it on adequate and independent state law grounds. This was all addressed at the cert petition stage, was it not? Yes, I think that it was, but I think it was still, perhaps, an improvident grant. What about our decision in Riley? Your friend suggests that that's a strong argument against your point. You know, we did in Riley exactly what you said we shouldn't do here. Well, I would suggest instead that in Riley and Holmes, there were moments where the broader constitutional claim was presented. They may not have done it in the way that we're saying it should have happened, but they did do it at some point. I think that this court's decision in Illinois v. Gates is actually more informative, more instructive, because there the petitioner did raise a Fourth Amendment suppression claim throughout, however, when this court considered whether it could consider a modification to the exclusionary rule, this court recognized that that claim had not been presented to the state court and that, therefore, it should not be reviewed. What about all the things on 386, 388? I mean, he mentions the Confrontation Clause a bunch of times, and I suppose he'd be satisfied if we just said, well, as applied to his case, it's unconstitutional. There is no doubt that he raised the Confrontation Clause claim, but he raised it as applied to him. He said simply that... What difference does that make? If we give a reason that he's right and the reason applies to more than his case, that might be perfectly satisfactory to you, then, wouldn't it? Well, I think it does make a great deal of difference to New York's courts. I think they should have the opportunity to see how the broader constitutional question before them... It might be true. He's given a bunch of reasons in his briefs about why it's unconstitutional, and certainly a large number of those are pretty strong, and I suppose we just said, well, those are the reasons. That wouldn't strike down the whole law. It would just say that the door opening is not applicable in those cases. So, I'm anxious to hear what your argument is on the merits of that. Ms. Mignola, can I ask... Oh, sorry. Did you have more you wanted to say? Ms. Mignola, can I turn to the merits? On pages 19 to 21 of Mr. Fisher's brief, he points out that under this rule of completeness, some of our cases, even Crawford itself, presumably, you know, he makes the argument that evidence that we said was testimonial and barred by the Confrontation Clause could have come in. So, you know, in Crawford, he raises a claim of self-defense. His wife's testimonial statements, we said, had to stay out, but they contradicted his claim of self-defense. What's your answer to that? Well, if I understand your question, Your Honor, I think that simply contradicting the defense, simply if the people have evidence that would contradict the defense, that cannot be the basis for opening the door. And that is something that we address in our brief. I think the New York standard is different. There has to be something that is truly misleading. And when you look at what is misleading, it is very much like the way that the traditional rule of completeness operates. The hypothetical that was posed by the Court, there are two portions of the statement. One portion of the statement, the declarant, perhaps a third-party suspect, says, for example, yes, I possess the murder weapon, but a day before the murder, I sold it to the defendant. The defendant offers the first part of the statement, but not the second. But in this case, this contradiction-type case, to draw the conclusion, Mr. Fisher points out that to draw the conclusion that the statement or that the defendant's position is misleading requires a value judgment on the part of the Court that the defendant is misleading. In other words, that his rendition isn't true, but the other outside-of-court statement was. So I don't think that it is, it does require that kind of analysis, because I do not believe that New York's rule is that broad. It cannot be, I think Mr. Fisher is right, it can't be that simply if the people have evidence that merely contradicts the defense theory of the case, that that opens the door to evidence that would otherwise be barred by the Confrontation Clause. I think it is a much more narrow rule. There has to be something, some way in which the defense has misled the jury. And in that regard, the judge is not making a decision about what is true. The judge in this case is not making a determination that Morris's guilty plea is true, that those statements are correct. Isn't there two ways to prevent the jury from being misled? The first is simply just to keep out what the defense is proffering. That's what your adversary says, that's what Mr. Fisher says. The trial judge, if he believed any of the testimony or arguments he was making misled the jury, he should have rejected them. But the judge said no, these arguments are legitimate. So now the question is, and this is what he argued from the trial court to the appellate court, to the court of appeals, can I mislead the jury simply by making legitimate arguments based on legitimate evidence and open the door to non-testimonial, to non... To testimonial hearsay. To testimonial hearsay, when I didn't present that testimonial hearsay. I didn't present part of it, I didn't do anything with it. Can you, the prosecutor, violate the confrontation clause by introducing something? So I think that... Isn't that what his argument was below? Yes, again, it's as applied to him. He said he didn't open the door. I don't understand what applies, means or not. My confrontation clause was violated because the trial court misapplied Reed. To me, that sounds like misapplied Reed because it let in testimonial hearsay when I didn't open the door. And even if I opened the door, they couldn't do it. That's what he argued, correct? He argued that he did not open the door. Right, because he can't open the door legally, correct? But I think he's asking this court a broader question, whether a defendant can open the door. That's his question presented. And that question, that broader question, was not presented to New York State Court. But I want to... Would it have, would, have you ever known the Court of Appeals to go back on a decision like Reed, that it just decided there are no material changes between Reed in this case? And say, we're going to revisit Reed and there's no such thing as opening the door. Or do you think it would have said, just what they were arguing is, Reed didn't open the door this way? That's what he argued, correct? Right, but I think Reed was at least seven years earlier. And so it may very well had Mr. Fisher, with all of his arguments and expertise, explained to the New York Court of Appeals why he thought that a rule of that nature was unconstitutional, broadly speaking, that a defendant could never open the door. I think New York Court should have had a chance to review that, consider it, and determine whether there were any modifications. Whether, for example, it should have said, the judge should have stricken the testimony, stricken the evidence. But again, I want to focus a little bit on, it's so important that what was happening here is not simply that the evidence that was contradicted the defense theory. That can't be what opens the door. I agree with that. It has to be that there was something misleading about what the defense was doing.  So identify that here. I'm sorry, Justice? Identify what was misleading about what he did. Well, I think what was misleading is that he was implying to the jurors, first of all, that Mr. Morris' case ended in a manner that was unsatisfactory. And he really led the jurors to speculate about how that prosecution ended. Furthermore, he did something that, pre-trial, the judge had issued a very strong ruling and had made a determination that a theory of the defense was misleading. And that was to ask the jurors to rely on the fact that the prosecutors were charging him and therefore they believed that Morris was guilty. It was asking the jurors really for vouching. And that's how the judge framed it. That's how he talked about it, that the defense was wanting to rely on vouching, right? And so if you look, for example, in the joint appendix at pages, I think, 48 through 56, there's a tremendous discussion in there about what the judge saw was misleading. Counsel's efforts to use the prosecutor's previous opening or beliefs and conclusions of the government actors as though that were factual evidence that should be considered for its truth. The judge kept that up. The jury didn't hear that. But he continued on that strategy even though the jurors did not hear the opening statement from the Morris trial, he nevertheless came in his opening statement at this trial, the defense came in this trial, and he made arguments that, again, picked up that theme and he did a cross-examination of Detective Jimmick and cross-examination of Gilliam. Again, picked up that theme and he certainly, you know, brought that theme home just as the judge anticipated, brought it home in his summation. That was, you know, a piece of his, of what he was trying to do was say, look, the government believed and relied on the witnesses that identified Morris and you can too because of the fact that they relied on. And that was improper and the judge understood that that was misleading. And the judge understood that they were really drawing, asking the jurors to draw an inference and to rely on something that was out of bounds and was unlawful, right? And so that needed to be corrected. In addition, talking to the jurors about how the Morris prosecution. Counsel, you've answered my question. Perhaps you'll let Justice Gorsuch ask this one. Yes. Thank you. Do you agree that the rule of completeness traditionally understood doesn't apply here because the defendant didn't introduce any out-of-court statement in evidence? Yes, Your Honor. Okay. I agree that this is not a. This is something beyond that. It is something, but it relies so much on exactly that same principle. No, I, that's the answer to my question. And then you also, as I understood it with Justice Breyer, I just want to make sure I've got this right. You do not object to this court deciding the constitutionality of the Reed rule as applied in this case. Is that right? I think that was presented to the state court, yes, Your Honor. Okay. Thank you. I mean, if I could just go back to what Justice Barrett and Justice Sotomayor were talking about, about what this is a supposed remedy for. You said that this rule comes in as a remedy and you admit that it can't be remedying the fact that the defendant contested the prosecution's factual narrative. But, but really everything that happened here, the rule was being used as a remedy for that. I mean, the, the, the statements that the government wanted to admit are statements about whether the person whom the defendant accused of committing the crime had a particular kind of gun and, and, and that was being used to contest the defendant's idea that yes, this third party committed the crime. He had the right kind of gun. So, I mean, it's, it's all about the state trying to contest the defendant's narrative, which is contesting the prosecution's narrative. Your Honor, I agree that the state was arguing for and urging the court to issue a broader ruling. But I think that at the end of the day, I have to believe that the judge didn't agree with that. And I'll tell you why. If you look at the joint appendix between pages 106 and 109, the judge draws this important distinction. He accepts that the, the evidence about the plea allocution or the statement made in the plea allocution would most certainly be relevant. He says that Morris's plea allocution is probative, but whether or not it's admissible is a different question. Right? Whether Morris possessed a 9-millimeter is a subject that is in play, but the judge points out, quote, as to the manner in which that subject can be presented, that may be a different question. The judge acknowledges that the statements in Morris's plea allocution would be testimonial in nature under Crawford and would present confrontation problems, whether or not they satisfy the hearsay exception. And he continues, the subject, whether Morris possessed a 9-millimeter gun is relevant. Should there be a way of proving that, meaning a way that comports with the confrontation clause, that Morris was in possession of a .357 and not a 9-millimeter, that issue is relevant. So, for example, if Morris were here and he were able to testify and be called as a witness, his testimony about which gun he possessed would not be immaterial. He'd be allowed to testify, and I would find it to be probative. The problem, the judge says, quote, the problem arises because you don't have constitutional language in which to offer that evidence. It's academic as to whether it's relevant. So I really feel that that tells you, and when you read that, you understand the judge understood this distinction. And so when he is invoking the Reid decision, what he's saying is that there is something misleading. And he may, he went, you know, he did acknowledge that he thought that the defense was doing something, I forget what the language is, acceptable. But that's, I don't feel that that's because he thought that the, I think that the thing he's finding there is that he doesn't necessarily think that the defense is behaving badly, but nevertheless, the jury is being misled. So how does it work? Simple case. Smith is accused of murder. Smith, who testifies, says, I didn't do it. Jones did it. Jones did it. He had the knife, he had the gun, and he had the poison already. And I slung with it. Prosecutor. Well, unfortunately, Jones is in Mongolia. But we would like to introduce a Jones affidavit, which he gave in our local office known as the Star Chamber. And we would like to produce this. Can he do it? New York? No, I don't. Why not? Because it's not misleading. I don't think there's anything. It's not misleading. The prosecutor said, I mean, the person said, I didn't do it. Jones did it. What could be more misleading? But I think that that's not misleading to the jury, OK? I think you have to understand that when the defense attorney is making inferences, he's relying on something that's out of bounds. And that's what was going on here. If, again, if you, well, I see that you doubt what I'm saying there, just. Yes, you're hoping that I'll explain it better. But I think that the part that is out of bounds is, again, this idea that he was asking the government belief. But at the time that the government prosecuted Mr. Morris, that was early days. Later on, he believed something else. Mr. Morris pled guilty to the conduct that the government believed he was actually guilty of. Again, in his opening statement, the defense talks about the fact that the Morris case must have been ended in a way that was frustrating for the victims and the families. He's leaving this speculation about how that case ended. Again, that was outside the bounds and unfair. Was the opening the door rule used here as a way of counteracting statements and questions by counsel that never should have been allowed? Well, that's always a tricky question because I think judges are inclined to give the defense a little elbow room and to give that rather than strike something once it's happened. You know, the judge didn't necessarily know how the defense was going to give its opening or that he was going to include these ideas, especially after he had given such a strong ruling before trial. So once it happens, do you want to cut his wings? Do you want to tell the jury what happened? Or do you want to say, look, what we're going to do is we're going to allow these couple of lines of plea allocution. And with it, we're going to introduce the hearsay statements from Mr. Morris's attorney that completely dilute and undercut and, frankly, would have been what the cross examination and so-called confrontation, what that would have really looked like. Weren't there more direct and clearly proper ways of counteracting these statements and these questions when the defense suggested that the outcome of the Morris case was somehow helpful to him? Didn't that open the door for testimony about what actually happened in the Morris case? Or when the defense suggested that the police believed that somebody else did the shooting, didn't that open the door to testimony about further investigative steps? Was this done the right way? That's what I'm saying. Was the opening the door rule? I understand the trial court doesn't want to strike statements made in an opening. I understand that. But is this being used as a sort of a corrective? It wasn't really necessary if it was attacked more directly. So I think that that was part of the New York state standard is that the court should only admit those statements that are reasonably necessary and that it was part of the judge's determination. So I do feel that that's the way the judge sized it up. He's using his discretion. Look, in cases, for example, where a defendant is disruptive in the courtroom, there may be lots of alternatives, right? You can gag him and bind him. You could delay the proceedings. Courts have alternatives. But it's really got to be up to the judge to weigh and balance those alternatives to come up with the thing that is the best fitting. And what he did here, as I said, was he admitted not only the couple of lines of the from Morris about what he did, but the judge also allowed the jurors to hear the reasons that Morris took that plea. He pled guilty. He got out of jail right that day. He only served a two-year sentence. So they understood the larger context. They understood some of the information that would have been elicited had there been a right, had there been a confrontation or had there been cross-examination on that point. So he balanced it. So he crafted the remedy that he thought fit the situation. You might have done something different. I'm sorry. Haven't we said, though, in a situation that the Constitution has already made a decision about the way in which the evidence could be made more reliable? In other words, you have to have the confrontation? So, Mr. Chief Justice, I think the critical distinction here is that that is a rule that the procedural mechanism is a substitute, a substitute basis for determining reliability of evidence. When the prosecution is saying, well, we'd like to try to get this in through what we all have recognized as hearsay exceptions, right? Those are the exceptions when there's another basis, when there's a dying declaration or any of the other methods we think of when we think of hearsay exceptions, right? Those are the exceptions. This is not an exception. It's a limitation. I think it's conceptually very different, right? The trial court, like this Court has talked about in Taylor, has the discretion to fashion a remedy when the defendant transgresses a state rule. So, for example, in the context of the constitutional provision, the defendant has a right to compulsory process and to present evidence. But if the defense transgresses a rule that deals with discovery or notice, the state can't limit that right. In Melendez-Diaz, this Court certainly talked about the fact that the state could impose rules. For example, the state could say, well, okay, we have an analyst who was prepared to certify the results of a test. If you want to cross-examine and take advantage, exercise your right of confrontation, please notify us. If the defendant doesn't meet a deadline, the defendant doesn't follow those rules, he forfeits his right. The state can craft rules that are designed or have a legitimate purpose, and that is to uphold the intent— Those are regular, normal procedural rules. You know, you have to object and all those kind of things. It's different, though, to have procedures that are intended to be substitutes for the confrontation clause. I mean, you appreciate the fact that there are two different equitable exceptions and procedural rules. And what did the defendant do here that was wrong and that could only be considered a forfeiture of his constitutional right? The judge himself said, no, this is perfectly appropriate. Well, I think that what the judge is saying there is that he's not faulting the lawyer. He understands why the lawyer feels he needs to go down this path. Nevertheless, he understands that it's misleading to the jury. And that's a distinction. So it doesn't have to be that the lawyer was ineffective or that he needs to be punished in some way. It's that, still, the court's core duty is to make sure that the jurors are not misled so that they can do their job. And that's part of what Taylor talks about, right, is the duty of the court and the important interest that the court has in maintaining the integrity of its process. And that's why these rules can be appropriate. I would say that the rule of completeness is right along with that. That's where the rule of completeness gets its authority from, because otherwise, if you don't have that, the jury can be misled. And it's not that the judge is deciding which portion of the statement is true or if it's true. He's just saying that the jurors can't do their job and decide what the statement means if they don't have both portions of it. That's the rule of completeness. If a judge can insist on the introduction of hearsay based on his assessment that otherwise the jury would be misled on the truth of the matter at hand, why does it matter whether the defendant opens the door in your parlance or not? I mean, if the truth-seeking function is that important and the cross-examination right is that unimportant, what does it matter whether the defendant opens a door, closes a door, whether there's a door at all? Well, I do think that that's where there is a good balance, because if he's not opening the door, then it shouldn't come in. But if the government's failed to produce something important that the judge thinks without which the jury's really not going to understand just how bad a guy this guy really is. But again, I feel that that's- Why not just- what does a door have to do with anything if it's all about the misleading of the jury? I guess I'm still- you could answer that question. Right. I appreciate what you're saying. I just think that what is meant by misleading is much narrower. Otherwise, you'd be seeing a proliferation of cases where there would just be no confrontation clause, and everybody would say it's contradictory and misleading because- Exactly, yeah. But it hasn't happened just- it has not happened just as- I'm asking for a limiting principle. The limiting principle, yes. It has to be that what is misleading is really about whether the jurors can fairly evaluate the truth of- Isn't that always the eye of the beholder? Well, I think that that's what the judge is, is the beholder, and he's- He's certainly a beholder. We're certainly beholders. But doesn't that suggest that it's something more than just a simple procedural rule? No, I think- Like you have to file your brief in 30 days. I think it is a procedural rule. I think that it- One that depends upon the eye of the beholder. But that's what the traditional rule of completeness is, right? It's exactly the analysis- Well, I thought we agreed the rule of completeness is different than this case, because that's just, you know, if you introduce half of a document, the whole thing comes in. But then you have to ask, what is the conceptual basis for that? Exactly, and that's what we've been talking about. Thank you. Justice Thomas? Justice Breyer? Justice Kagan? Justice Kavanaugh, anything further? No further questions. Thank you, counsel. Rebuttal? Thank you, Mr. Chief Justice. I'd like to make one point on preservation, and then two points on the merits. As a preservation, I take the tone of some of the court's questioning today to be imagining writing a decision that said that it's not enough to simply put on evidence or present a defense that could be contradicted by testimonial hearsay to waive the confrontation right or forfeit it. But we would leave for another day whether the rule of completeness might be different. That is precisely the argument that we made to the New York Court of Appeals at pages 386 to 388. We said that if all that triggers the introduction of the evidence is that it's relevant to refute the defense, that would violate the Sixth Amendment. So the exact opinion that some of the justices have imagined writing is exactly what we asked the New York Court of Appeals to write and what it refused to do and why we brought the case to this court. It's also well within the question presented. Justice Alito, you asked about the question presented, I think, and others have. The question presented is whether or under what circumstances a defendant forfeits the right in the opening-the-door situation. And so, yes, we make two alternative arguments. We say the defendant can never open the door. But from the beginning of the cert petition on through our merits brief, we have made the narrower argument that at least when the evidence is merely relevant. And that's the primary argument that we made in our blue brief that I'm making here today. As to the merits, I want to say two things. First is the state keeps putting gloss on what state law requires as a sort of misleading test. I would direct the court to New York law, as in the Fardon case cited in our blue brief that is described as saying that the out-of-court evidence the state wishes to introduce would contradict the defense. In Massey in 2004, the New York appeals said again, it would be directly contradictive to the defense. At JA 184 of this case, the trial judge said the prosecution's evidence would be contrary to the defense. Nothing more is required as a matter of state law. The state opening-the-door doctrine never talks about impropriety or defines misleading in any other way than being contrary to the defense. So that leads me to the second point, which is, again, the further gloss that my opposing counsel wants to put on the New York decision below. And yes, there was a pre-trial colloquy about whether Mr. Hemphill could, as she puts it, invite speculation from the jurors about what happened in the Morris case. The trial judge said, no, you can't. And then that was the end of the matter in a pre-trial colloquy. If anything in Mr. Hemphill's opening or cross-examination or closing had been thought by the prosecution to step over that line, the prosecution could have objected, and the trial court could have reprimanded the defense counsel if that indeed stepped over the line. The state never even objected to these various statements. And if you look at the joint appendix-and I'd urge the court to take a careful look at the joint appendix if you have any questions on this-that dispute over improper speculation was entirely separate from the decision to introduce Mr. Morris's allocution. And I'll start where my friend started, at J106 to 109. The language she's describing about Morris's allocution is rejecting the prosecution's argument that the allocution is not even testimonial. That's what the trial judge is saying, is that, wait a minute, prosecution, this seems to be testimonial, rejecting the prosecutor's argument that it's admissible because it's non-testimonial. So the trial judge is recognizing we may have a confrontation problem here on our hands. And then as the colloquy goes forward in further conversation at JA117 to 120, JA139 to 141, the trial judge is again saying, I see a possible confrontation problem here. And the state's saying, no, this is relevant evidence to refute the defense. We want to introduce it. And then at JA184 to 185, the trial judge says, aha, I have a way to let it in. The prosecution didn't even think of this. The trial judge said, I have a way to let it in. Under the Reed decision of the Court of Appeals, we could say the defendant opened the door. And that's where I started my argument today, was reading that ruling. It's at 184, 185. The trial judge says, look, I understand this defense is in all respects appropriate. My friend keeps saying that the trial judge was thinking maybe there was something inappropriate. The trial judge expressly says, your defense and arguments are in all respects appropriate. But nonetheless, under Reed, they opened the door because the testimonial hearsay is contrary to the defense theory that Morris is the shooter. We ask the Court to hold that merely making testimonial evidence relevant to contradict the defense theory is not enough to forfeit the Confrontation Clause rights. That would establish an important principle of the law, reassert the classic understanding of the Confrontation Clause, tell the New York Court of Appeals that it was wrong, at least in this kind of a situation, that the rights can be forfeited, and also resolve the circuit split that we brought to the Court in our cert petition. If the Court has no further questions, I'll submit the case. Thank you, Counsel. The case is submitted.